UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL HAVERLY
BRENDA HAVERLY                                                                                      PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:03-CV-363-S

C.R. ENGLAND, INC.                                                                                  DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, C.R. England, Inc. ("England"), for summary judgment (DN 22). The plaintiffs, husband and wife Michael and Brenda Haverly, have both filed suit against England under Title I of the Americans With Disabilities Act ("ADA"). Michael Haverly claims that he was dismissed from England's truck driving school because of a congenital deformity. Brenda Haverly claims she was dismissed from the same truck driving school because of her association with her husband. For the reasons set forth below we will grant defendant's motion for summary judgment by a separate order entered this date.

## BACKGROUND

Michael Haverly ("Michael") was born with a congenital defect causing deformity in both arms, hands and fingers. He has no forearms, no actual wrists, and no actual opposable thumbs. As Michael describes it, "my hand is attached where my elbow would be attached...." Michael Haverly Depo., pp. 109-10. Despite his disability, Michael has held many jobs, such as, restaurant worker, courier, catering manager, salesman, carnival worker, car dealer, self-employed automotive detailer, security guard, inventory control-person and cleaning person. Michael has been married to Brenda Haverly ("Brenda") for approximately seven years. Brenda does not have any physical or mental impairments that impact her ability to work.

In 2001, Michael attended Thoroughbred Truck Driving School ("Thoroughbred") in Lexington, Kentucky. While attending Thoroughbred, Michael learned about England. England is an over-the-road trucking company that hauls freight nationwide. England also operates a truck driving school in Spartanburg, South Carolina. The school's program consists of four weeks of training and has a tuition cost of $3,000. After completing the school, graduates are eligible for, but not guaranteed, employment with England. However, a student's tuition may be reduced if the applicant is hired by England and completes one year of employment.

Michael believed that England would be a good company to work for because it used newer tractors, had a "cheaper" tuition than other programs, and because it was "a company that was very cool about having husband-wife teams." *Id*. at 102. When Michael contacted England to learn more about the program, he informed one of the school's recruiters, Mary Woods ("Woods"), about his disability and told her that "it's never stopped [him] before." *Id*. at 109. Woods informed Michael that he and Brenda could enroll in the school as long as they each had a Commercial Driver's License ("CDL") permit. Students attending England are not required to have any prior experience to enroll.

Michael spoke to Brenda about England's school, and they both decided to enroll with the goal of becoming a husband-wife driving team. Both Michael and Brenda understood that England would not employ them as truck drivers unless they completed the school and performed satisfactorily. After receiving a starting date from Woods, Michael and Brenda traveled from Kentucky to South Carolina by bus. When they arrived at the school to begin their training on November 1, 2000, Michael and Brenda each signed an Employment/Training Agreement. Inter alia, the agreement stated:

> THIS EMPLOYMENT/TRAINING AGREEMENT IS ENTERED INTO THIS ___ DAY OF ____, 19____ BY AND BETWEEN C.R. ENGLAND & HEREAFTER, APPLICANT

> WHEREAS, APPLICANT IS DESIROUS OF LEARNING THE SKILLS NECESSARY TO BECOME A LONG HAUL TRUCK DRIVER, AND WHEREAS, ENGLAND OPERATES A TRUCK DRIVING SCHOOL AND, NOW THEREFORE, IN CONSIDERATION OF THE FOREGOING, ENGLAND AND APPLICANT AGREES AS FOLLOWS.
>
> 1. BEFORE APPLICANT WILL BE CONSIDERED FOR EMPLOYMENT AND ADMISSION TO ENGLANDS (sic) SCHOOL THE FOLLOWING CRITERIA MUST BE MET:
>    A. BE AT LEAST 21 YEARS OF AGE
>    B. HAVE A CLEAN DRIVING RECORD
>    C. OBTAIN A TEMPORARY CDL, CHAUFFERS (sic) LICENSE
>    D. PROVIDE PAST EMPLOYMENT BACKGROUND
>    E. TAKE A DRUG ANALYSIS TEST
>    F. PARTICIPATE IN AN INTEGRITY INTERVIEW
>    G. PASS A DOT PHYSICAL (PAID FOR BY APPLICANT)
>    H. ATTEST TO PERFORMANCE OF THE ESSENTIAL FUNCTIONS OF THE JOB...

*Id.*, Exh. #4.

After attending the program for about a week, Michael and Brenda were asked to meet with Gordon Lambert, an instructor, and Glen Wilson, a manager, at England's driving school. During the meeting Michael was told that he was being dismissed from the school because the company was concerned that he could not safely load and unload freight as required. At this same time, Brenda was also dismissed from the program, although no reason was given as to why she was being dismissed. Both Michael and Brenda were then given bus tickets back to Kentucky and told that an employee of the company would take them to the bus station after they packed there belongings.

When Michael and Brenda returned to Kentucky they filed a complaint with the EEOC. The complaint alleged that Michael had been discriminated against in terms and conditions of employment because of his disability and that Brenda had been discriminated against and denied employment opportunities due to her association with Michael, a disabled individual. After the EEOC issued Right to Sue Notices, Michael and Brenda filed this suit.

England has moved for summary judgment, arguing that Michael and Brenda were neither employees nor applicants of England, and therefore, not protected by Title I of the ADA. In the

alternative, England argues that even if Michael and Brenda are considered employees or applicants, their claims would still fail because Michael cannot establish a prima facie case of disability discrimination.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## ADA CLAIM

"The ADA prohibits an employer from discriminating against an individual with a disability because of that individual's disability." *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 252 (6th Cir. 2000). Specifically, Title I of the ADA prevents discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms conditions, and privileges of employment." 42 U.S.C. § 12112(a). Therefore, Michael and Brenda must first show that they were either employees or applicants of England to be protected by Title I of the ADA.

The term employee is defined by the ADA as "an individual employed by an employer." 42 U.S.C. § 1211(4). The Sixth Circuit, uses "common-law principles of agency and the master-servant relationship to determine if" an individual is an employee. *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998). The following are factors considered when determining whether an individual is an employee:

> The hiring party's right to control the manner and means by which the product is accomplished; the skill required by the hired party; the duration of the relationship between the parties; the hiring party's right to assign additional projects; the hired party's discretion over when and how to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the hiring party's regular business; the hired party's employee benefits; and tax treatment of the hired party's compensation.

*Id*. at 568. Although "there is no catch-all set of standards; a court should examine all incidents of the alleged employee/employer relationship." *Id*.

We find that Michael and Brenda do not meet any criteria to be considered employees of England. England did not control the manner and means by which Michael and Brenda accomplished tasks. Nor were Michael and Brenda ever paid or receive any employee benefits. The reason that Michael and Brenda never performed any work or received any benefits from England is because they were students at England's truck driving school and not employees of England's long haul trucking business.

As students at England's truck driving school, we also find that neither Michael nor Brenda were England applicants. As students, Michael and Brenda had only applied for England's truck driving school. In fact, both Michael and Brenda understood that a prerequisite for applying to England was to graduate and perform satisfactorily at the school. The agreement signed by both Michael and Brenda did not state that they were applying for a truck driving position, but instead

stated that the "applicant is desirous of **learning the skills** necessary to become a long haul truck driver...." Michael Haverly Depo., Exh. #4 (emphasis added). Since, Michael and Brenda were neither employees nor applicants, we will grant summary judgment in favor of England.

Assuming arguendo that Michael and Brenda were applicants, their claims will still fail. A "plaintiff [that] has direct evidence that the employer relied on his or her disability in making an adverse employment decision" bears the burden of establishing that: (1) he is disabled; and (2) he is "otherwise qualified" for the position despite his disability: "a) without accommodation from the employer; b) with an alleged essential job requirement eliminated; or with a proposed reasonable accommodation." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). Regardless of whether or not Michael can establish that he is disabled under the statute,[1] he has failed to meet his burden of establishing that he is qualified to work for England.

*Boback v. GMC*, 1997 U.S. App. LEXIS 297 (6th Cir. 1997) exemplifies similar facts to this case. The facts in *Boback* demonstrate an employee's attempt to establish that he was qualified despite his disability based solely on his own testimony. *Id. In Boback*, the Sixth Circuit found that because the plaintiff had failed to offer affirmative evidence that he was qualified to perform the job, other than "his personal observation that he could perform such work," and because the plaintiff had not proposed any job modifications, he had failed to meet his burden and granted summary judgment in favor of the defendant. *Id*. Here, Michael has presented no evidence that he was qualified, other than his own testimony, and he too has failed to propose any accommodation. Therefore we find

---

[1] Although England argues that Michael is not disabled because his physical impairment does not substantially limit one or more of his major life activities, we find that Michael is disabled as defined by the statute. England's argument is based on Michael's assertions that he is not limited in major life activities, and his ability to develop alternative methods when performing tasks such as opening jars and buttoning upper buttons. However, "[t]he ADA 'addresses substantial limitations on major life activities, not utter inabilities.' Thus, when an impairment results in significant limitations, that impairment is substantially limiting even if the limitations are not insurmountable." *Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 22 (1st Cir. 2002) (citation omitted). Michael's assertions are therefore a testament to his positive view regarding his disability, not proof that he is not disabled.

that Michael has failed to meet his burden of establishing that he is "otherwise qualified." Since Michael has failed to establish that he is a qualified individual with a disability, Brenda's associational discrimination claim also fails.

## **CONCLUSION**

For the reasons set forth above, the court will grant summary judgment in favor of England. A separate order will be entered herein this date in accordance with this opinion.